IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENNETH MAYEUX,

      **Plaintiff,**

vs.                                                     No. CIV 06-0488 RB/WDS

**MY WAY HOLDINGS LLC**
**d/b/a SUNLAND PARK**
**RACETRACK AND CASINO,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's ("SPRC's") Motion to Dismiss (Doc. 2), filed on June 9, 2006. Jurisdiction is based on 28 U.S.C. § 1331. On August 8, 2006, I gave the parties formal notice that the motion to dismiss was converted to a motion for summary judgment and afforded them thirty days to submit supplementary materials. The parties submitted no supplementary materials. Having considered the arguments of counsel, record, and applicable law, I find that summary judgment should be granted in favor of SPRC.

**I. Background.**

On December 12, 2005, Plaintiff ("Mr. Mayeux") filed suit pro se in the Third Judicial District Court, County of Doña Ana, State of New Mexico. On May 22, 2006, counsel entered an appearance on behalf of Mr. Mayeux. On May 31, 2006, counsel filed a First Amended Complaint, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, as amended, the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA"), as well as state-law claims for interference with an employment relationship and intentional infliction of emotional distress.

SPRC timely removed the matter to this Court and moved to dismiss for failure to state a claim. Mr. Mayeux filed a response in opposition to the motion to dismiss, attached materials outside the pleadings, and moved to amend the amended complaint. SPRC concurred with the motion to amend, provided that it received additional time to file a reply. The motion to amend and the request for extension of time were granted.

In the Second Amended Complaint, Mr. Mayeux asserted retaliation and discrimination under the ADA, tortious interference with an employment contract, and intentional infliction of emotional distress. Mr. Mayeux attached materials to his Second Amended Complaint.

SPRC attached additional materials to its reply brief and requested that the motion to dismiss be converted to a motion for summary judgment.

**II. Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir.2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

**III. Facts.**

The following statement of facts is set forth in the light most favorable to Mr. Mayeux, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir.1997). SPRC hired Mr. Mayeux as an Assistant Chef on November 27, 1999, and

promoted him to Executive Chef within three months. (Second Amended Compl. ¶ 3; 10; Mayeux Aff. ¶ 2.) Mr. Mayeux worked as SPRC's Executive Chef until his employment was terminated on April 2, 2005. (Second Amended Compl. ¶¶ 3-4.) Mr. Mayeux was an at-will employee, a fact that he acknowledged in writing four times between November 26, 1999 and June 18, 2004, when he signed acknowledgments and receipts for employee handbooks. (Brubaker Aff. ¶ 4, Ex. A-1.)

Mr. Mayeux was diagnosed, approximately three years ago, with a "life-threatening disability that is attacking his liver functions." (Mayeux Aff. ¶ 3; Second Amended Compl. ¶ 9.) The liver condition is Hepatitis C.[1] (Vasquez Aff. ¶ 3.)

Mr. Mayeux did not formally notify SPRC of his liver condition during his employment. (Mayeux Aff. ¶ 4.) In late 2002, Dora Vasquez, SPRC's Human Resources Representative, learned that Mr. Mayeux was being treated for Hepatitis C because Mr. Mayeux had a number of claims for very expensive medication. (Vasquez Aff. ¶ 3.) Ms. Vasquez reviewed Mr. Mayeux's health insurance claims and discussed his condition with Bruce Brubaker, SPRC's Human Resources Manager, and Assured Benefits, SPRC's third-party health insurance administrator. (Vasquez Aff. at ¶¶ 4-5.) Mr. Brubaker asked Ms. Vasquez to determine whether there were any medical reasons why Mr. Mayeux should not handle food. (Vasquez Aff. at ¶ 5.) Ms. Vasquez and Mr. Brubaker "were assured there were not" and the two had no further discussions on the subject. (*Id.*).

After SPRC learned of the condition, SPRC treated Mr. Mayeux differently than other employees. (Mayeux Aff. ¶ 5.) In July 2004, SPRC wrongly accused Mr. Mayeux of theft. (Mayeux Aff. ¶¶ 7-8.) A security camera recorded Mr. Mayeux removing items from a storage area at SPRC

---

[1] Because Mr. Mayeux wishes to keep the exact nature of his condition confidential due to a perceived negative stigma associated with the disease, I granted the joint motion to file under seal all documents identifying the condition. (Doc. 9.)

3

and placing them in his car. (Brubaker Aff. ¶ 13.) Mr. Brubaker showed Mr. Mayeux the video and asked him for an explanation. (*Id.*) Mr. Mayeux explained that he had brought in some of his own pots and pans, he took them back, and Jesse Olivas, SPRC's Security Supervisor was aware of the situation. (*Id.*) Mr. Brubaker confirmed the explanation with Mr. Olivas. (*Id.*) Mr. Mayeux was not disciplined in connection with the wrongful allegation. (*Id.*)

Ms. Vasquez wrongfully disclosed Mr. Mayeux's medical condition to at least three other people who had no reason to know about the condition. (Mayeux Aff. ¶ 9.) Mr. Mayeux reported the disclosure to Mr. Brubaker, who verbally admonished Ms. Vasquez to be careful about who was around when she was discussing insurance issues. (Brubaker Aff. ¶ 8.)

On November 3, 2004, Mr. Mayeux filed an internal grievance with SPRC about the disclosure by Ms. Vasquez. (Mayeux Aff. ¶ 10.) In the internal grievance, Mr. Mayeux complained that Ms. Vasquez discussed his medical condition in front of other employees and that Ms. Vasquez told him that "too many medical issues plague me and my family." (Pl. Ex. B.) Ms. Vasquez did not respond to the internal grievance until July 14, 2005, which was about three and a half months after Mr. Mayeux's employment was terminated. (Mayeux Aff. ¶ 11.)

In Fall 2004, Alex Ortiz, SPRC Park Food and Beverage Manager and Mr. Mayeux's supervisor, made notes about deficiencies the Mr. Ortiz perceived in Mr. Mayeux's job performance. (Ortiz Aff. ¶ 6, Ex. B.) Mr. Mayeux never saw the notes, was not notified of the issues, and never had an opportunity to respond to the allegations regarding his performance. (Mayeux Aff. ¶¶ 17-19.) During the same time-period, Mr. Ortiz informed Mr. Brubaker that Mr. Ortiz believed that Mr. Mayeux should be replaced. (Brubaker Aff. ¶ 9.)

In early 2005, an employee complained about Mr. Mayeux because the employee felt that Mr.

Mayeux treated the employee "like a child." (Mayeux Aff. ¶ 14.) On the same day, Ms. Vasquez called four[2] other employees into her office and asked them to file personal complaints against Mr. Mayeux. (Mayeux Aff. ¶ 15.) None of these four unidentified complaints were in Mr. Mayeux's file and they did not factor into the decision to terminate Mr. Mayeux. (Vasquez Aff. ¶ 7; Brubaker Aff. ¶ 12.) Mr. Mayeux was not given an opportunity to respond to any of the complaints against him. (Mayeux Aff. ¶ 16.)

Mr. Mayeux and a commissary clerk were involved in a verbal disagreement that resulted in the commissary clerk submitting a written grievance against Mr. Mayeux. (Mayeux Aff. ¶ 20.) Mr. Mayeux was not given an opportunity to respond. (Mayeux Aff. ¶ 21.) SPRC required Mr. Mayeux, but not the commissary clerk, to attend an anger management class. (Mayeux Aff. ¶ 22.)

In March 2005, Mr. Brubaker and Mr. Ortiz decided to replace Mr. Mayeux at the end of the racing season. (Brubaker Aff. ¶ 9; Ortiz Aff. ¶ 7.) Ms. Vasquez was not involved in the decision to discharge Mr. Mayeux. (Ortiz Aff. ¶ 8; Vasquez Aff. ¶ 8.)

On March 6, 2005, Mr. Mayeux was informed that April 3, 2005 would be his final day of employment. (Mayeux Aff. ¶ 23.) On April 2, 2005, Mr. Mayeux submitted a note from J. Stephen Golden, M.D. to SPRC that requested medical leave for the duration of his employment. (Mayeux Aff. ¶ 25; Brubaker Aff. ¶ 10, Ex. C.) Dr. Golden stated that Mr. Mayeux's health had "seriously deteriorated to a point that he is no longer able to perform the duties and responsibilities his job entails in his present condition." (Brubaker Aff. ¶ 10, Ex. C.) Dr. Golden considered Mr. Mayeux

---

[2] In Paragraphs 104 and 122, Mr. Mayeux alleged that Ms. Vasquez called "at least three" employees into her office and asked them to file complaints against Mr. Mayeux "that never would have been filed otherwise." (Second Am. Compl. ¶¶ 104, 122.) In Paragraph 28 of the Second Amended Complaint, Mr. Mayeux alleges that Ms. Vasquez called four employees into her office and asked them to file complaints. (Second Am. Compl. ¶ 28.)

"disabled indefinitely at this point." (*Id*.) Before April 2, 2005, Mr. Mayeux was able to perform the physical demands of his job, rarely missed work, and requested no accommodations. (Ortiz Aff. ¶ 6; Pl. Br. at 8.)

The request for medical leave was denied and Mr. Mayeux was terminated on April 2, 2005. (Mayeux Aff. ¶ 27.) Mr. Mayeux was eligible for medical leave pursuant to SPRC written policies, yet he did not receive it. (Mayeux Aff. ¶¶ 28-29.) Mr. Mayeux was classified as a management-level employee, yet he did not receive management-level benefits such as a free cellular phone, extra privileges, vacations, and bonuses. (Mayeux Aff. ¶ 30.) Mr. Mayeux was formally written up only once during his employment. (Mayeux Aff. ¶ 34.) Mr. Mayeux received good annual employment evaluations and a written commendation for superior work performance on June 25, 2004. (Mayeux Aff. ¶¶ 35-36.)

On May 23, 2005, Mr. Mayeux filed a charge of discrimination with the EEOC, and received his right to sue letter on September 10, 2005. (Mayeux Aff. ¶¶ 37-38.) During the administrative proceedings, SPRC produced a list of alleged problems with Mr. Mayeux's job performance in September 2004. (Second Amended Compl. ¶ 30.) Mr. Mayeux was not advised of the alleged problems before his termination and was not afforded an opportunity to respond. (Second Amended Compl. ¶¶ 30-32.)

**IV. Discussion.**

**A. Mr. Mayeux is not disabled within the meaning of the ADA.**

The ADA prohibits employment discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12112. To establish a prima facie case of disability discrimination, an employee must show: (1) he is disabled within the meaning of the ADA; (2) he is qualified, with or without

reasonable accommodation, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *Mason v. Avaya Communications, Inc.,* 357 F.3d 1114, 1118 (10th Cir.2004); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir.2003).

Mr. Mayeux has not established the first element of the prima facie case because he is not disabled within the meaning of the ADA. "Disability under the ADA is a term of art." *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir.1999). The ADA defines disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(A-C). Mr. Mayeux argues that he qualifies as disabled under Subsection A in that he has an actual physical impairment and under Subsection B in that he has a record of such impairment.

In order to establish an actual impairment under § 12102(2)(A), Mr. Mayeux must (1) have a recognized impairment; (2) identify one or more appropriate major life activities; and (3) show that the impairment substantially limits one or more of those activities. *Holt v. Grand Lake Mental Health Center, Inc.*, 443 F.3d 762, 765 (10th Cir.2006); *Doebele*, 342 F.3d at 1129. The first two elements are questions of law; the third is a question of fact that may be decided by the court on summary judgment. *Doebele*, 342 F.3d at 1129, 1130 n.5.

Hepatitis C is a viral disease that causes liver inflamation. *See* http://www.webmd.com/hw/hepatitus_c/hw144586.asp. Hepatitis C can lead to permanent liver damage, as well as cirrhosis, liver cancer, and liver failure. *Id.* SPRC does not dispute that Hepatitis C is a recognized physical impairment. Indeed, courts have found that Hepatitis C qualifies as a recognized physical impairment under the ADA. *Sussle v. Sirina Protection Systems Corp.*, 269 F.Supp.2d 285, 297 (S.D.N.Y.

7

2003). In that Mr. Mayeux has a recognized impairment, the defining questions are whether Mr. Mayeux has identified one or more appropriate major life activities, and whether the impairment substantially limits one or more of those activities.

"Major life activities" are those activities that are of central importance to daily life. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). They are basic activities that the average person in the general population can perform with little or no difficulty. 29 C.F.R. § 1630.2(i). Examples of major life activities include activities such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. *Id*. The "touchstone" for determining whether an activity qualifies as a major life activity is the activity's significance in daily life to the average person. *See Bragdon v. Abbott*, 524 U.S. 624, 638 (1998).

In order to identify "major life activities," a plaintiff "must articulate with precision the impairment alleged and the major life activity affected by that impairment" and the court must analyze only those activities identified by the plaintiff. *Doebele*, 342 F.3d at 1129. "[A] plaintiff must specifically plead or prove at trial the impairments and the major life activities he or she asserts are at issue." *Poindexter*, 168 F.3d at 1230. Mr. Mayeux has not identified any major life activity affected by his impairment.

Before the decision to terminate him, Mr. Mayeux was able to perform the physical demands of his job, rarely missed work, and requested no accommodations. (Ortiz Aff. ¶ 6.) In his brief, he affirmatively argues that his condition did not preclude him from doing his job. (Pl. Br. at 8.) While he suffered "flu-like symptoms" due to the medications for his condition, he was able to perform the essential functions of his job and took only two days of sick leave in six years. (*Id*.) A disability

requires more than just a medical diagnosis of a particular condition; it requires substantial limitation on a major life activity. *See* 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Summary judgment is appropriate where the evidence shows a plaintiff can perform a variety of activities. *See Holt*, 443 F.3d at 766. Mr. Mayeux has not established that he suffered from a substantial limitation of any major life activity before the March 6, 2005 decision to terminate him.

Mr. Mayeux argues that he qualifies as disabled because he has a record of an impairment. *See* 42 U.S.C. § 12102(2)(B). In order to establish a record of impairment, "a plaintiff must have a history of, or have been erroneously classified as having, an impairment that has substantially limited a major life activity." *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1158 (10th Cir.2002). The intent of this provision is to ensure that people are not discriminated against because of a history of a disability. *See* 29 C.F.R. § 1630.2(k). Mr. Mayeux claims a record of such impairment because the SPRC reviewed his medical records on a regular basis.

The record-of-impairment standard is satisfied only if the plaintiff actually suffered a physical impairment that substantially limited one or more of his major life activities. *Sorensen v. University of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir.1999). Because Mr. Mayeux has presented no evidence that he has a record of an impairment severe enough to substantially limit a major life activity, Mr. Mayeux has failed to establish a record of a disability.

Mr. Mayeux has submitted no evidence that he experienced greater difficulty than anyone else in performing any major life activity. Without this evidence, a fact-finder cannot make the comparison between Mr. Mayeux and the "average person" as ADA requires. *Toyota Motor*, 534

9

U.S. at 198; *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir.2001); *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 497 (10th Cir.2000). Although the Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, . . . that party must identify evidence which would require submission of the case to a jury." *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir.1997). After examining the record and resolving all reasonable inferences in the light most favorable to Mr. Mayeux, I find that Mr. Mayeux has failed to demonstrate a genuine issue for trial on his ADA disability claim. SPRC is entitled to summary judgment on the ADA disability claim because Mr. Mayeux has failed to demonstrate an actual impairment, or a record of such impairment, within the meaning of the ADA.

**B. No prima facie case of retaliation under the ADA.**

The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Under the ADA, an employee must prove the following elements in order to establish a prima facie case of retaliation: (1) that he engaged in an activity protected by the statute; (2) that he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; (3) that there was a causal connection between the protected activity and the adverse action. *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir.2001). The plaintiff need not be disabled within the meaning of the ADA in order to recover for retaliation so long as he has a reasonable, good faith belief that the statute has been violated. *Id*.

Mr. Mayeux is unable to satisfy the first element of the prima facie case because he did not engage in protected activity. Mr. Mayeux filed an internal grievance about Ms. Vasquez's disclosure of his medical condition on November 3, 2004. In the internal grievance, Mr. Mayeux complained

that Ms. Vasquez discussed his medical condition in front of other employees and that Ms. Vasquez told him that "too many medical issues plague me and my family." (Mayeux Aff., Ex. A.)

The ADA does not prohibit the wrongful disclosure of a person's medical condition. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216-17 (4th Cir.2002) (physician's ADA retaliation claim failed because her opposition to her employer's treatment of dialysis patients was based on violations of state medical malpractice law and not the ADA). The record contains no evidence that Mr. Mayeux engaged in activity protected by the ADA. After examining the record and resolving all reasonable inferences in the light most favorable to Mr. Mayeux, I find that Mr. Mayeux has failed to demonstrate a genuine issue for trial on his ADA retaliation claim. SPRC is entitled to summary judgment on the ADA retaliation.

## C. Tortious interference with prospective employment relationship unsupported.[3]

"A claim for tortious interference with contractual relations that does not induce the breach of an existing contract is in the nature of a claim for interference with prospective business advantage, and it requires a plaintiff to prove that the defendant used improper means or acted with an improper motive intended solely to harm the plaintiff." *Silverman v. Progressive Broadcasting, Inc.*, 125 N.M. 500, 509, 964 P.2d 61, 70 (1998). "Where the defendant is accused of interfering with the plaintiff's opportunity to enter into contracts with third persons, a strong showing must be made that the defendant acted not from a profit motive, but from some other motive, such as personal vengeance or spite." *Fikes v. Furst*, 134 N.M. 602, 609, 81 P.3d 545, 552 (2003).

---

[3] Mr. Mayeux styled this as a claim for tortious interference with an employment contract in his Second Amended Complaint. Mr. Mayeux acknowledged in the body of his complaint and his brief that this claim is that Ms. Vasquez interfered with his prospective employment relationship with SPRC. (Second Am. Compl. ¶ 97; Pl. Br. at 10.)

11

Mr. Mayeux has failed to establish that Ms. Vasquez's[4] sole motive was to cause him harm. Mr. Mayeux contends that Ms. Vasquez called at least three individuals into her office and told them to file complaints against Mr. Mayeux. However, none of these unidentified complaints were in Mr. Mayeux's file and they did not factor into the decision to terminate him. Ms. Vasquez did not decide to terminate Mr. Mayeux. As a Human Resources Representative, Ms. Vasquez reviewed Mr. Mayeux's health insurance claims and discussed his condition with the insurance company and Mr. Brubaker. Thus, Ms. Vasquez acted at least in part with a legitimate business purpose. Mr. Mayeux failed to make the required strong showing that Ms. Vasquez used improper means or acted with an improper motive intended solely to harm him. After examining the record and resolving all reasonable inferences in the light most favorable to Mr. Mayeux, I find that Mr. Mayeux has failed to demonstrate a genuine issue for trial on his claim for interference with prospective employment relationship. SPRC is entitled to summary judgment on this claim.

**D. Intentional infliction of emotional distress unsupported.**

Under New Mexico law, the court initially determines as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *See Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.1984).

Generally, in order to qualify under this standard, the recitation of the underlying facts to an average member of the community must arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Padwa v. Hadley*, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (1999) (*citing*

---

[4] Ms. Vasquez is not a defendant in this case. Mr. Mayeux argues that SPRC is vicariously liable for her actions.

Restatement (Second) of Torts § 46 cmt. d. (1965)).  The conduct must be so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.  *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981).  The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability under this theory.  *Padwa*, 127 N.M. at 419, 981 P.2d at 1237.

> In *Padwa*, the New Mexico Supreme Court further explained that:
>
> By characterizing conduct as atrocious and utterly intolerable and beyond all possible bounds of decency, the Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage.  It recognizes that, as part of the price of personal liberty, a free and democratic society must tolerate certain offensive conduct, as well as some obnoxious or morally deviant behavior.  Accordingly, the mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability . . . Accordingly, caution, therefore, is the watchword when examining whether the tort of intentional infliction of emotional distress encompasses the facts of a case.

*Padwa,* 127 N.M. at 420, 981 P. 2d at 1238.

Accepting all well-supported factual allegations as true and construing them in the light most favorable to Plaintiff establishes that the conduct of SPRC did not rise to the level necessary to permit recovery under the tort of intentional infliction of emotional distress.  *Padwa,* 127 N.M. at 420, 981 P. 2d at 1238 (initiating sexual relations with friend's current wife, former wife, and former fiancée insufficient to state claim for intentional infliction of emotional distress).

Mr. Mayeux asserts that Ms. Vasquez caused other employees to file complaints against him, disclosed his medical condition, and actively looked for reasons to terminate him.  (Second Am. Compl. ¶¶116-127.)  He argues that SPRC terminated him because it no longer wanted to be liable for his medical bills.  (Pl. Br. at 10-11.)  This conduct is not so atrocious and utterly intolerable so as to progress beyond all possible bounds of decency so as to constitute intentional infliction of

13

emotional distress under New Mexico law.

The distress suffered by Mr. Mayeux in this case is no more severe than the distress suffered by many people who are terminated from their employment. As such, it is not actionable under New Mexico law as a claim for intentional infliction of emotional distress. After examining the record and resolving all reasonable inferences in the light most favorable to Mr. Mayeux, I find that Mr. Mayeux has failed to demonstrate a genuine issue for trial on his claim for intentional infliction of emotional distress.

**V. Conclusion.**

SPRC is entitled to summary judgment on all claims.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 2), filed on June 9, 2006, and converted to a Motion for Summary Judgment on August 8, 2006, is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment in favor of Defendant shall issue forthwith.

*[signature]*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**